**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ABTREX INDUSTRIES, INC.,

    Plaintiff,

v.

NATIONAL CITY BANK, a subsidiary
of PNC Bank,

    Defendant.
-and-

PNC BANK, N.A., successor by merger and
f/k/a NATIONAL CITY BANK,

    Third-Party Plaintiff,

v.

JP MORGAN CHASE BANK, N.A.; and
WACHOVIA BANK, N.A.,

    Third-Party Defendants.
_____/

Case No. 09-12540

HONORABLE DENISE PAGE HOOD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PNC BANK'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This matter is before the Court on Defendant PNC Bank's Motion for Summary Judgment **[Docket No. 41, filed on January 13, 2011]**. Plaintiff's filed a response on February 1, 2011 **[Docket No. 44, filed on February 1, 2011]**, to which Defendant filed a reply on February 15, 2011.

**II.    STATEMENT OF FACTS**

1

Plaintiff Abtrex Industries, Inc. ("Abtrex" or "Plaintiff"), a small business, opened a checking account around or about September 1, 1996 with Valley American Bank & Trust, which later became National City Bank and, following a merger in 2008, became PNC Bank ("PNC" or "Defendant"). The account listed the following individuals as authorized signers: Harold Byars, Keith Byars, David Graham, Kurt Byars, and Kevin Byars. *See* Signature Card, Ex. A to Def.'s Mot. for Summ. J.

In 2006, Plaintiff employed Christina Robbins ("Robbins") as office manager for Plaintiff's Indiana division. In this position, Robins had direct access to Plaintiff's checks and account information, as she was responsible for bookkeeping, making deposits to Plaintiff's accounts, and reviewing and reconciling Plaintiff's bank statements. Robbins was supervised by Keith Byars.

Between November 24, 2006, and October 8, 2008, Robbins wrote twenty-five checks to her personal creditors, Juniper and Homecomings, embezzling $291,713.81 from Plaintiff. In early 2009, while Robbins was purportedly out of the office on medical leave, Keith Byar's wife, Judy Byar's, came into the office to help with the finances. Judy Byars discovered that there were missing cancelled checks and bank statements. Plaintiff requested copies of the checks from what was then National City Bank, beginning on March 24, 2009. Plaintiff formally notified Defendant that it was disputing the forged checks in May of 2009, by signing affidavits of forgery. Defendant denied Plaintiff's request to credit the account at issue for the embezzled funds on the grounds that Plaintiff failed to timely report the unauthorized activity. This lawsuit ensued.

Defendant contends that Robbins was able to embezzle this money due to a lack of

2

oversight. Although Keith Byars supervised her, he did not review reconciliations prepared by Robbins, or account statements sent by the bank. Defendant supports its argument of lack of oversight citing the embezzlement of approximately $70,000 by one of Plaintiff's previous office managers. Defendant also states that Plaintiff had a highly informal hiring process, noting that, although Robbins warned Plaintiff that her previous employer might not provide a favorable reference, Defendant failed to follow up with the employer and so did not discover tRobbins had embezzled from that employer.

According to Defendant, Plaintiff's checking account was governed by a National City Business Account Agreement ("Account Agreement"), effective July 22, 2006. Under the agreement, customers, including Plaintiff, had an affirmative duty to review each account statement "to discovery any alterations; unauthorized signatures, Items, Entries or indorsements; unauthorized transactions; or errors. . . ." Account Agreement, Ex. B. to Def.'s Mot. for Summ. J. at 10. Following such a discovery, the depositor (in this case, Plaintiff) must notify the bank of the issue in writing within fourteen days. *See id.* Plaintiff contends that it is not bound by the Account Agreement.

Defendant brings this motion for summary judgment on the grounds that Plaintiff's claims fail under the Account Agreement, under Michigan law, and under the Uniform Commercial Code.

### III.    SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be clear from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV. ANALYSIS

### A. Account Agreement

Defendant contends that Plaintiff's claims are barred as a matter of law by the express agreement of the parties. According to Defendant, Plaintiff was bound to the terms of the Account Agreement because it was and continued to be a customer of PNC Bank. Plaintiff argues that it was never a party to the Account Agreement. When Plaintiff opened up an account with Valley American Bank & Trust Co., a signature card was signed, binding Plaintiff "to the terms stated on this contract and disclosures received on this date." The Account Agreement purported to bind Plaintiff, states that "Depositor, by signing the signature card for the Account, by using the Account or by permitting an authorized signer to use the Account, agrees to the provisions of this Agreement which are subject to amendment and further agrees that this Agreement is binding on Depositor's successors, representatives and assigns." Account Agreement, Ex. B to Def.'s Mot. for Summ. J. at 1. By continued use of the account, Plaintiff was bound by the terms of the agreement.

4

According to the deposition testimony of Anna Patterson, a PNC employee with responsibility for training on bank policies for detecting fraud, and the employee who completed the internal investigation of Abtrex's claim against PNC, Defendant never determined whether a copy of the agreement had ever been forwarded to Plaintiff. Defendant argues that the testimony of Keith Byars belies any argument that Plaintiff did not receive a copy of the Account Agreement. In actuality, Keith Byars testified that " . . .nobody would have seen [the Account Agreement] but me, and I don't know if I actually looked at it or not if I did receive it." Dep. of Keith Byars, Ex. A to Def.'s Reply Brief. The question of whether Plaintiff ever had a copy of the Account Agreement and whether it should have been on notice of the terms and conditions within remains a question of fact for the trier of fact, rendering summary judgment on the issue inappropriate.

  **B.**  **Michigan Uniform Commercial Code**

    **1.**  **Exercise of Ordinary Care by Defendant**

Defendant contends that Plaintiff's claims are also barred under the Michigan Uniform Commercial Code, M.C.L. § 440.4406. Pursuant to M.C.L. § 440.4406(3),

> If a bank sends or makes available a statement of account or items pursuant to subsection (1), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

In this case, Plaintiff does not dispute that account statements were made available to it. Plaintiff also does not argue that it exercised reasonable promptness. Instead, Plaintiff argues that the bank could only transfer funds out of the account upon request by an individual

authorized on the signature card, and Robbins was not authorized to remove funds. Plaintiff further argues that, pursuant to M.C.L. § 440.3403, the fact that Robbins forged the signature of Keith Byars does not provide Defendant the necessary authorization to transfer the funds. M.C.L. § 440.3403 states "*unless otherwise provided* . . . an unauthorized signature is ineffective *except* as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. . . . [t]he civil or criminal liability of a person who makes an unauthorized signature is not affected by any provision of this article *which makes the unauthorized signature effective for the purposes of this article.*" (emphasis added). These provisions indicate that the state legislature contemplated that the bank should not be held liable for forged signatures, accepted in good faith and not disputed by the account holder.

Plaintiff argues that Defendant's failure to exercise ordinary care in accepting the forged checks renders Defendant liable in the amount of the unauthorized funds. Pursuant to M.C.L. § 440.4406(5), if a "customer provides that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer . . . and the bank" to the extent each contributed to the loss. Defendant argues that it is entitled to summary judgment, as Plaintiff cannot make a showing that Defendant failed to exercise ordinary care. In this case, ordinary care is defined as:

> observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this article or article 4.

M.C.L. § 440.3103(g).

According to the deposition testimony of Anna Patterson, a PNC employee whose responsibilities include training bank employees on policies for detecting forged signatures, it was not bank policy to "physically examine every check that comes through." Dep. of Anna Patterson, Ex. K to Def.'s Mot. for Summ. J. at 35:20-22.  The Michigan statute does not require examination of the check.  M.C.L. § 440.3103(g).  However, Defendant has not demonstrated that its internal policy does not vary from reasonable commercial standards.  Defendant states that signatures are not manually reviewed, due to the computerized and automated process of handling checks.  Plaintiff provides evidence of one check processed by Defendant that contained no signature at all.  Ex. A to Pl.'s Response to Def.'s Mot. for Summ. J.  Defendant has not proffered evidence that reasonable commercial standards do not require any signature.  Summary judgment is not appropriate on this issue, as there remains a genuine issue of fact for the trier of fact as to whether Defendant exercised "ordinary care."

### 2.      **Exercise of Ordinary Care by Plaintiff**

Defendant argues that Plaintiff's failure to exercise ordinary care in its business operations caused the loss, and, therefore, Plaintiff is barred from recovery.  M.C. L. § 440.3406(1) provides that:

> A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

Before determining whether Plaintiff exercised ordinary care, it must be resolved that Defendant acted in good faith.  Having already found a genuine issue of material of fact as to whether Defendant exercised ordinary care,  whether Plaintiff's own failure to exercise ordinary care, if any such failure existed, caused or contributed to the loss in this case remains a genuine question

of material fact.

Defendant argues that a drawer who fails to adequately supervise an employee responsible for all banking duties substantially contributes to the forgeries. Defendant then argues that Robbins, who handled bank account statements, accounts payable and receivable, made deposits, and had responsibility for other banking duties, was not supervised, and the failure to supervise Robbins caused Plaintiff's loss. Plaintiff argues Robbins was never authorized to remove funds from the Abtrex bank account and it reasonably believed that Plaintiff would be notified if its corporate checks were cashed by consumer credit card or mortgage companies. Whether Robbins was adequately supervised, and whether any lack of supervision contributed to Plaintiff's loss is an issue of fact to be decided by the trier of fact.

### 3. Limitation on Liability

Plaintiff concedes that M.C.L. § 440.4406(6) limits its recovery, if any, to $92,274.22. This section provides that "*without regard to care or lack of care of either the customer or the bank*, a customer who does not within 1 year after the statement or items are made available to the customer discover and report his or her unauthorized signature . . . is precluded from asserting against the bank the unauthorized signature or alteration." (emphasis added). In this case, Plaintiff reported the forgeries to the bank in May of 2009, limiting any possible recovery to checks appearing on Plaintiff's statements after May of 2008. After May 2008, there were five checks that appeared on the statements, totaling $92,274.22. As a matter of law, Defendant's liability, if any, is limited to the amount of $92,274.22.

### C. Conversion

Defendant argues Plaintiff's conversion claim must fail as a matter of law. "[F]unds

deposited in a bank account are not specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank." *Fundacion Museo de Arte v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2nd Cir. 1998). Under M.C.L. § 440.3420(1)(i), "[a]n action for conversion of an instrument may not be brought be the issuer." Plaintiff argues that the Uniform Commercial Code recognizes that the drawer [or issuer] of an instrument has an adequate remedy against the bank for a credit to the account for unauthorized payment of the check. That an adequate remedy is available to a party who establishes liability exists does not negate the statutory rule that the issuer of an instrument cannot bring an action for conversion. *See* U.C.C. §3-420(i) ("An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument."); *see also Pamar Enters. v. Huntington Banks*, 580 N.W.2d 11, 16 (Mich. Ct. App. 1998)(The "drawer of the check may not maintain an action for conversion."). As the issuer of the check, Plaintiff is barred from suing for conversion as a matter of law, and summary judgment is proper as a matter of law.

**V.     CONCLUSION**

Accordingly,

IT IS ORDERED that Defendant PNC Bank's Motion for Summary Judgment **[Docket No. 41, filed on January 13, 2011]** is GRANTED IN PART (limiting any liability to $92,274.22 and dismissing Plaintiff's conversion claim) and DENIED IN PART (on whether liability exists under the Account Agreement or state statute).

                                            s/Denise Page Hood
                                            Denise Page Hood
                                            United States District Judge

Dated: August 18, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2011, by electronic and/or ordinary mail.

                                            s/LaShawn R. Saulsberry
                                            Case Manager